Jon G. Shadinger Jr., Esq. (036232017)
Shadinger Law, LLC
2220 N East Ave
Vineland, NJ 08360
(609) 319-5399
js@shadingerlaw.com
*Attorney for Plaintiff, Dennis Maurer*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| DENNIS MAURER, an Individual<br><br>Plaintiff,<br><br>vs.<br><br>CORAL SANDS MOTEL L.L.C., a New Jersey Limited Liability Company,<br><br><br>Defendant. | Case No. 1:26-cv-09825<br><br>**COMPLAINT** |

### Introduction

Plaintiff, DENNIS MAURER, an individual, on his own behalf and on the behalf of all other similarly situated mobility impaired persons hereby sues the Defendant, CORAL SANDS MOTEL L.L.C., a New Jersey Limited Liability Company, ("Defendant") for injunctive relief, damages, attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. §12181 et seq. ("ADA") and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq. ("LAD").

### The Parties

1.      Plaintiff is an individual over eighteen years of age and is otherwise sui juris. Mr. Maurer resides at 8 Prospect Avenue, Egg Harbor Township, NJ 08234.

1

2.      Defendant owns and/or operates a place of public accommodation alleged by the Plaintiff to be operating in violation of Title III of the ADA and the LAD.

## Jurisdiction and Venue

3.      Defendant's property/place of public accommodation – a hotel known as Coral Sands Motel – is located at 709 E 9th Street, Ocean City, NJ 08226 (the "Property", the "Hotel", or "Coral Sands").

4.      Venue is properly located in the District of New Jersey because venue lies in the judicial district of the property situs.  The Property is located in and does business within this judicial district.

5.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.[1]

6.      Jurisdiction over the state law claim vests with this Court pursuant to 28 U.S.C § 1367.

7.      The Defendant owns, leases, leases to, and/or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA.  The Defendant is thus required to comply with the obligations of the ADA.[2]

8.      Plaintiff is an individual with disabilities as defined by and pursuant to the ADA.  Mr. Maurer has multiple sclerosis and therefore has a physical impairment that substantially limits many of his major life activities[3] including, but not limited to, not being able to walk, stand, reach, or lift. Mr. Maurer, at all times, requires the use of a wheelchair to ambulate.

---

[1] See also 28 U.S.C. § 2201 and 28 U.S.C. § 2202

[2] 28 CFR § 36.201(a) and 28 CFR § 36.104

[3] as defined by 28 CFR § 36.105(b)(1-2)

**Factual Background**

9.      Mr. Maurer is a staunch advocate of the ADA. Since becoming mobility impaired (and having to fully rely on the use of his wheelchair to ambulate) he has dedicated his life to the elimination of accessibility discrimination so that he, and others like him, may have full and equal enjoyment of all public accommodations without fear of discrimination and repeated exposure to architectural barriers.

10.     Mr. Maurer is the president an advocacy group, known as The Independence Project, whose goal is to foster a community of disabled people, educate them as to their rights, and ensure their accessibility to places of public accommodation across the country.

11.     Generally speaking, Mr. Maurer continues to encounter architectural barriers at many of the places that he visits. Seemingly trivial architectural features such as parking spaces, curb ramps, and door handles are taken for granted by the non-disabled but, when implemented improperly, become arduous and even dangerous.

12.     The barriers to access that Mr. Maurer experiences at differing places of public accommodation are often similar in nature. For example, he is repeatedly faced with sloping in parking lots, improper curb ramps, abrupt changes of level within paths of travel, and non-accessible restrooms. This holds true for hotel rooms as well; he is often faced with a lack of maneuverability within the room and a lack of accessible features within the restrooms. He has become frustrated and disheartened by the repetitiveness of the complaints he has been forced to make to the employees and management at various establishments in the past; most often to no avail. Thus, he now finds his redress through the ADA; as Congress intended.

13.     Mr. Maurer enjoys stays in close proximity to his home and shore locations throughout the year (especially the summer months) for shopping, entertainment, and leisure purposes. In doing

so he often stays at hotels with his family in surrounding locations (Ocean City, Atlantic City, Cape May, etc.) for "staycations" – since it can be more difficult for him to regularly travel great distances. Mr. Maurer's last visit to the Property occurred on or about May 1, 2026, when he visited the Property as a prospective bone fide patron with the intent to avail himself of the goods and services offered to the public within but found that it was rife with ADA violations and barriers to access.

14.     Mr. Maurer intends to return to the Property not only as a patron but also to monitor any progress made with to respect to ADA compliance – he sincerely hopes that any return visits are not made in vain.

15.     Mr. Maurer has personally encountered exposure to architectural barriers and otherwise harmful conditions that have endangered his safety at the Property.

16.     The ADA has been law for over thirty (30) years and yet the Property remains non-compliant. Thus, Mr. Maurer has actual notice and reasonable grounds to believe that he will continue to be subjected to discrimination by the Defendant.

17.     Mr. Maurer has a realistic, credible, existing, and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to the Property as described but not necessarily limited to the barriers he has personally experienced – which are listed in Paragraph 25 of this complaint.

18.     Following any resolution of this matter Plaintiff will ensure that the Defendant undertakes the remedial work that is required to cure existing violations, under the appropriate standard, in full compliance with the ADA.

## COUNT I

### Violation of Title III of the
### Americans with Disabilities Act, 42 U.S.C. § 12181, et seq.

19.     Plaintiff realleges and incorporates by reference all of the allegations contained in all of the preceding paragraphs.

20.     Enacted by overwhelming bipartisan consensus in 1990, and reinforced with the same consensus in 2008, the ADA reflects Congress's recognition that "discrimination" has precluded "many people with physical or mental disabilities" from "fully participat[ing] in all aspects of society."[4]

21.     Congress's objective was "the elimination or reduction of physical and social structures" that thwart "equal-citizenship stature for persons with disabilities."[5]

22.     Title III of the ADA provides a cause of action to "any person" with disabilities who personally encounters an unlawful accessibility barrier and is thus "subjected to discrimination on the basis of disability."[6]

23.     The Defendant has discriminated against the Plaintiff, and other similarly situated mobility impaired persons, by denying access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by the ADA.

24.     A preliminary inspection of the Property has shown that violations of the ADA exist.  That inspection, performed by Plaintiff's expert, further revealed that the remediation of all

---

[4] 42 U.S.C. § 12101(a)(1)

[5] *Tennessee v. Lane*, 541 U.S. 509, 536 (2004) (Ginsburg, J., concurring)

[6] 42 U.S.C. § 12188(a)(1)

violations/barriers listed in Paragraph 25 are both technically feasible and readily achievable. Plaintiff's expert has based this judgement on personal knowledge of materials, pricing, labor, and the completion of similar projects in the area. The remaining barriers to access – which are procedural in nature and/or policy based – will need to be monitored into the future to ensure that the current discrimination is ceased and never reinstituted.

25.    The following are architectural barriers and violations of the ADA that Mr. Maurer has personally encountered during his visits to the Property:

**<u>Parking and Exterior Accessible Route</u>**

   a.  The designated accessible parking space located at the Property lacks a proper access aisle, is not located on the closest most direct route, and does not lead to an accessible route; a violation of the ADAAG and Sections 402, 406, and 502 of the 2010 ADA Standards. These barriers have prevented Mr. Maurer from freely unloading from his van which utilizes a fold-out ramp; to avoid becoming blocked out by other vehicles he has been forced to park away from the facility in a flat, maintained area, travel around obstacles, and then through the vehicular area of the parking lot in order to reach the improperly designed and improperly located curb ramp.

   b.  The Property fails to provide a compliant accessible route from the parking area to the entrances; violating the ADAAG and Sections 402, 406, and 502 of the 2010 ADA Standards. The current route leads through the parking lot and the vehicular area and contains abrupt changes of level and cross-sloping.

   c.  The exterior accessible route at the Property is impeded by cross-sloping beyond the allowable limits and abrupt changes in level; in violation of the ADAAG and Section 402 of the 2010 ADA Standards.  Mr. Maurer has been impeded by the excessive sloping and

abrupt changes of level while traveling through the Property – these conditions present a tipping hazard and could damage his wheelchair.

d.  The Property fails to provide the requisite number of fully compliant accessible parking spaces and van-accessible parking spaces (as well as the requisite number of access aisles and van access aisles), a violation of Section 502 of the 2010 ADA Standards. Due to the lack of accessible parking, Mr. Maurer has been forced to park away from the Hotel as detailed above so that he could freely access his van and the improperly designed and improperly located curb ramp.

e.  The Property fails to provide a compliant route to the adjacent street/sidewalk. Mr. Maurer has been precluded from accessing the Property from these points of entry due to the lack of an accessible route; a discriminatory omission which limits his options for pedestrian travel and transportation; a violation of ADAAG and Section 206.2.1 of the 2010 ADA Standards.

f.  The Property fails to provide a continuous accessible route throughout the entirety of the Hotel; the existing route contains steps/stairs in several portions rendering those areas inaccessible to Mr. Maurer. These architectural barriers have prevented Mr. Maurer from travelling across the entirety of the Property in his wheelchair and constitute a violation of the ADAAG and Section 402 of the 2010 ADA Standards.

**Access to Goods and Services**

g.  Coral Sands provides interior and exterior service elements which are mounted beyond the prescribed reach ranges; in violation of the ADAAG and Sections 308 and 904 of the 2010 ADA Standards. Due to their height or the presence of obstacles Mr. Maurer cannot make use of these elements (countertops, work surfaces, vending, etc.).

7

h.  Coral Sands fails to provide accessible dining tables; a violation of the ADAAG and Section 902 of the 2010 ADA Standards. Due to the lack of an accessible dining table Mr. Maurer could not make use of the tables nor dine in a comfortable manner.

i.  Entering Coral Sands, in several areas, is impeded by abrupt changes in level at the threshold, excessive sloping at the base of the doors, improper door hardware, and a lack of wheelchair maneuvering clearance; in violation of the ADAAG and Sections 402 and 404 of the 2010 ADA Standards. Due to these barriers Mr. Maurer cannot freely/safely enter the facility from several different areas of the Property.

**Guestrooms/Restrooms**

j.  The restrooms/guestrooms within the Coral Sands lack all accessible elements and contain architectural barriers to access including a lack of wheelchair maneuvering space, a lack of lavatory knee clearance, and improper signage; violations of the ADAAG and Section 601 of the 2010 ADA Standards. Due to these barriers Mr. Maurer could not freely use the restrooms/guestrooms.

k.  The restrooms within Coral Sands contain improperly mounted grab bars, improper centerlines for the toilets, and lacks the proper door width and the any wheelchair maneuvering clearance; in violation of the ADAAG and Section 604 of the 2010 ADA Standards. Mr. Maurer could not use the restrooms due to the overall lack of accessible features.

l.  The lavatories within the guestroom restroom was a solid vanity type which lacked all knee clearance; thus Mr. Maurer could not access the sink. This is a violation of the ADAAG and Section 606 of the 2010 ADA Standards.

m.  Restrooms within Coral Sands provide dispensers (soap, towels, toilet tissue, etc.) which

8

are mounted outside proscribed reach ranges and are thus inaccessible to Mr. Maurer; a violation of the ADAAG and Section 308 of the 2010 ADA Standards.

n. The use of restroom doors within Coral Sands is impeded by improper signage and/or a lack of wheelchair maneuvering space; a violation of the ADAAG and Section 404 of the 2010 ADA Standards.

o. Mr. Maurer requires an accessible guestroom with an accessible bathtub or roll-in shower. Such was unavailable at the time of his visit; it is not clear whether Coral Sands possesses the requisite number of guestrooms with accessible bathtubs or roll-in showers nor the requisite number of accessible rooms with all accessible features as proscribed in Section 224.2 of the ADA Standards. Based on the number of total rooms at Coral Sands (less than 25) the Hotel should contain at least one (1) mobility accessible guestrooms and two (2) accessible guestrooms with communication features. Coral Sands' website does not display the option to select an accessible guestroom nor are there any photographs of any accessible guestrooms.

26. Each of the foregoing violations is also a violation of the ADA Standards for Accessible Design, originally published on July 26, 1991 and republished as Appendix D to 28 CFR part 36 ("1991 Standards"); the "2004 ADAAG", which refers to ADA Chapter 1, ADA Chapter 2, and Chapters 3 through 10 of the Americans with Disabilities Act and the Architectural Barriers Act Accessibility Guidelines, which were issued by the Access Board on July 23, 2004 and codified at 36 CFR § 1191, appendix B and D ("ADAAG"); and the 2010 Standards for Accessible Design

("2010 ADA Standards"), as promulgated by the U.S. Department of Justice.[7]

27.    Additionally, a Justice Department regulation commonly referred to as the Reservation Rule, 28 C.F.R. § 36.302(e)(1), explains that Title III requires hotels to ensure that their reservation services include the accessibility information necessary for disabled people to enjoy the services as fully as non-disabled people. The Reservation Rule provides that under Title III, a "place of lodging" must "with respect to reservations made by any means, including by telephone, in-person, or through a third party ... [i]dentify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs."[8]

28.    Under the Reservation Rule, a hotel's obligations extend to "reservations made by any means, including … through a third party."[9] Thus, hotels "must provide these third-party services with information concerning the accessible features of the hotel and the accessible rooms."[10]

29.    Coral Sands's website does not display the accessible room categories nor their availability. Mr. Maurer requested an accessible room during the checkout process but was told none were available. Further, the website provides no information pertaining to accessibility; this holds true at other third-party websites which list the Property (such as Hotels.com).

30.    This lack of information represents a violation of the Reservation Rule as it does not provide potential mobility-impaired patrons with easily accessible information with which to make

---

[7] 28 CFR § 36.104

[8] 28 C.F.R. § 36.302(e)(1)

[9] 28 C.F.R. § 36.302(e)(1)

[10] 28 C.F.R. pt. 36, app. A at 805

an informed purchasing decision.

31.     The discriminatory violations described in Paragraph 25 may not be an exhaustive list of the ADA violations that exist at the Property, but they are the result of a preliminary inspection and include those personally experienced by Mr. Maurer. Given the obvious and blatant violations, the Plaintiff alleges, on information and belief, that there are other violations/barriers on the Property which relate to his disability. Thus, Plaintiff requires thorough inspection of the Property in order to photograph and measure the architectural barriers which exist at the Property in violation of the ADA. Once said inspection has been completed, the Plaintiff may amend this complaint in order to provide proper notice to the Defendant regarding the scope of this lawsuit.[11]

32.     Plaintiff, and other mobility impaired persons, will continue to suffer discrimination, injury and damage without the immediate relief provided for by the ADA and requested herein.

33.     Defendant has discriminated against Plaintiff, and other mobility impaired persons, by denying access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of the ADA.

34.     Defendant continues to discriminate against Plaintiff, and other mobility impaired persons, by failing to remove architectural barriers, and communication barriers that are structural in nature.[12]

35.     Defendant continues to discriminate against Plaintiff, and other mobility impaired persons,

---

[11] See *Doran v. 7-Eleven Inc.*, (9th Cir. 2008) 524 F.3d 1034 (holding that once a plaintiff encounters one barrier at a site, they can sue to have all barriers that relate to their disability removed regardless of whether they personally encountered them)

[12] 42 U.S.C. § 12181(b)(2)(A)(iv)

by failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities.[13]

36. Defendant continues to discriminate against Plaintiff, and other mobility impaired persons, by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.[14]

37. If the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993[15] then the Defendant's facility must be readily accessible to and useable by individuals with disabilities in accordance with the 1991 Standards.

38. Pursuant to 28 CFR § 36.402(a)(1) "any alteration" made to the Property after January 26, 1992, must have been made so as to ensure that, to the maximum extent feasible, the altered portions of the Property are readily accessible to and usable by individuals with disabilities, including individuals, like Mr. Maurer, who use wheelchairs. An alteration is deemed to be undertaken after January 26, 1992, if the physical alteration of the property begins after that date.[16] Discovery in this matter will reveal if and when such alterations have taken place at the Property, and to what corresponding technical and scoping specification the Defendant must meet/exceed to bring the Property into compliance with the ADA.

39. Pursuant to 28 CFR § 36.304(a) the Defendant shall remove all existing architectural

---

[13] 42 U.S.C. § 12181(b)(2)(A)(ii)

[14] 42 U.S.C. § 12181(b)(2)(A)(iii)

[15] as defined by 28 CFR § 36.401(a)(2)

[16] 28 CFR § 36.402(a)(2)

barriers, including communication barriers that are structural in nature, where such removal is readily achievable.

40.     28 C.F.R. § 36.304(d)(2)(i) controls with respect to the corresponding technical and scoping specification to which each element – that has not been altered – must comply with or be modified to meet. Those are defined as follows:

   a.   Elements that have not been altered since on or after March 15, 2012, must comply with the 1991 Standards.

   b.   Elements that have existed prior to and have not been altered since on or after March 15, 2012, that do not comply with the 1991 Standards must be modified to comply with either the 1991 Standards or the 2010 Standards.

   c.   Elements that have been altered on or after March 15, 2012, that do not comply with the 1991 Standards must be modified to comply with the 2010 Standards.

41.     Plaintiff is not required to notify the Defendant of their violation of the ADA nor their ongoing discrimination prior to the filing of this action. To that end, Plaintiff has found that voicing concerns to employees and management, making phone calls, and writing letters is futile. In his experience the only way to spur action and achieve the accessibility required under the law is to file matters, like this one, and pray for the relief contained herein.

42.     Plaintiff is without adequate remedy at law and is suffering irreparable harm, including bodily injury consisting of emotional distress, mental anguish, suffering, and humiliation. Considering the balance of hardships between the Plaintiff and the Defendant, a remedy in equity is warranted.  The public interest would not be disserved by the issuance of a permanent injunction.

43.     Pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505, Plaintiff is entitled to recovery of attorney's fees, costs, and litigation expenses from the Defendant.

44.    Pursuant to 42 U.S.C. § 12188(a)(2), this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendant to alter the Property and make such readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the Property until such time as the Defendant cure all violations of the ADA.[17]

**WHEREFORE,** Plaintiff respectfully demands;

a.  The Court issue a Declaratory Judgment determining that the Defendant are in violation of Title III of the ADA.

b.  Injunctive relief against the Defendant including an order to (1) cure all ADA violations existing at the Property listed herein and those later found through discovery within the next six months; (2) to make the Property accessible to and usable by individuals with disabilities; and (3) to require the Defendant to make reasonable modifications in policies, practices or procedures, to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c.  An Order requiring the Defendant to cease its discriminatory practices and to maintain the requisite accessible features at the Property – as required by the ADA.

d.  An award of attorney's fees, costs, and litigation expenses (including expert fees and costs) pursuant to 42 U.S.C. § 12205.

e.  Such other relief as the Court deems just and proper and is allowable under Title III of the ADA.

---

[17] 42 U.S.C. § 12188(b)(2)

## COUNT II

### Violation of New Jersey Law
### Against Discrimination, N.J.S.A. 10:5-1 et seq.

45.     Plaintiff realleges and incorporates, by reference, all of the allegations contained in each of the preceding paragraphs.

46.     The Property is a place of public accommodation as defined by N.J.S.A 10:5-5.

47.     New Jersey law provides that all persons shall have the opportunity to obtain all the accommodations, advantages, facilities, and privileges of any public place of accommodation without discrimination on the basis of disability.  This opportunity is recognized and declared to be a civil right.[18]

48.     As set forth above, the Defendant has violated the LAD by denying Mr. Maurer, and all other mobility impaired persons, the full and equal enjoyment of the goods, facilities, services, and accommodations available at the Property.

49.     As a result of the aforementioned discrimination through repeated exposure to architectural barriers and other harmful conditions, Mr. Maurer has sustained bodily injury through the Defendant's actions – either intentionally or negligently – in the form of emotional distress, mental anguish, dignitary harm, and humiliation, in violation of the LAD.

**WHEREFORE**, Plaintiff respectfully demands;

   a.   That this Court assume jurisdiction.

   b.   The Court issue a Declaratory Judgment determining that the Defendant is in violation of the LAD.

   c.   An injunction ordering Defendant to immediately comply with the LAD by removing all

---

[18] Pursuant to N.J.S.A 10:5-4

architectural barriers listed herein or later found through discovery.

d.  A monetary award consisting of the individual Plaintiff's damages – to the maximum extent permitted – attorney's fees, and litigation expenses; including expert fees and costs.

e.  An order requiring the Defendant to cease its discriminatory practices and to maintain the requisite accessible features at the Property – as required by the LAD.

f.  Other relief that this Court deems just and proper and is allowable under the LAD.

Respectfully submitted on this 4th day of August 2026,

> */s/ Jon G. Shadinger Jr.*
> Jon G. Shadinger Jr., Esq.
> Shadinger Law, LLC
> 2220 N East Avenue
> Vineland, NJ 08360
> (609) 319-5399
> js@shadingerlaw.com
> *Attorney for Plaintiff, Dennis Maurer*